UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MIRIAM MOSKOWICZ,

                Plaintiff,

      v.

RONALD E RICHTER, Commissioner of NYC
Administration for Children's Services; MARIE
PHILIPPEAUX, Acting Deputy Commissioner;
JACQUELINE McKNIGHT, Borough
Commissioner; JAN FLORY, Deputy Commissioner;
GILBERT A. TAYLOR, Executive Deputy
Commissioner; DERRICK HINDS, Borough
Commissioner; LAWRENCE SARI, Supervisor for
Administration for Children's Services, Unit 278;
JEAN PIERRE WATSON, Child Protective
Specialist for Administration for Children's Services,
Unit 278; DEATRICE WILSON, Child Protective
Worker for Administration for Children's Services;
MARCIA MOORE; KAREN JOHNSON;
MARSHKA VIELOT; ABDUL OLORUNTOBA,
Caseworker for Child Protective Services, Unit 278;
DAVID TRANI; JOHN DOES 1-50;
WITHERSPOON, NYPD Detective #26397;
KYRKOS, NYPD Detective #12285; PICCIONE,
NYPD Detective #23160; JOHN DOE NYPD
DETECTIVES 1-50; THE CITY OF NEW YORK;
and THE STATE OF NEW YORK,

                Defendants.
------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAY 02, 2019 ★
BROOKLYN OFFICE

**MEMORANDUM & ORDER**
17-CV-3074 (WFK)(SJB)

**WILLIAM F. KUNTZ, II, United States District Judge:**

      Miriam Moskowicz ("Plaintiff"), proceeding *pro se*, filed the above-captioned complaint on May 18, 2017, purportedly on behalf of herself and her two minor children. By Order dated May 30, 2017, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915, dismissed the minor children as plaintiffs and several of the defendants, and gave Plaintiff leave to file an amended complaint. After multiple requests to

extend the time to file and after the case was dismissed and then reopened, Plaintiff filed an Amended Complaint on January 29, 2018 and a Second Amended Complaint on February 8, 2018. Having reviewed the Second Amended Complaint, the Court dismisses the claims against Defendants Ronald E Richter, Marie Philippeaux, Jacqueline Mcknight, Jan Flory, Gilbert A. Taylor, Derrick Hinds, Deatrice Wilson, Marcia Moore, Karen Johnson, Marshka Vielot, Abdul Oloruntoba, David Trani, the John Doe Police Officers, and the State of New York. The action may proceed against the remaining defendants named in the Second Amended Complaint.

## BACKGROUND

As alleged in the Second Amended Complaint, on December 9, 2011, an employee at RLS High School reported excessive school absences of Plaintiff's 16-year-old daughter Malka. Amended Compl. ¶ 30. Thereafter, the New York City Administration for Children's Services ("ACS") initiated an investigation. *Id.* ¶ 40. ACS assigned defendant Deatrice Wilson to investigate the report. *Id.* ¶ 42. Defendant David Trani was Wilson's supervisor, and defendant Marshka Vielot was Trani's supervisor. *Id.* ¶ 42. Caseworker Akunna Osuagwu also investigated. *Id.* ¶ 43. Defendants Marcia Moore, Karen Johnson, and Abdul Oloruntoba were also assigned as supervisors and managers. *Id.* ¶ 44. Osuagwu, Wilson, and Trani visited Plaintiff's home. *Id.* ¶ 46. Johnson told Plaintiff that ACS caseworkers routinely lie to their clients, and Oloruntoba told her that caseworkers "are 'trained' to lie." *Id.* ¶ 53. Plaintiff informed the ACS workers that their visits to her home were traumatizing to her and her child and, at Johnson's request, also sent letters from Malka's therapist and physician "about the traumatic impact upon Malka by the visits and interrogations of defendants City and ACS employees." *Id.* ¶¶ 57-61. Nonetheless, ACS continued its investigation and home visits. *Id.* ¶¶ 59, 62. On or about January 25, 2012, defendants Wilson, Trani, and Vielot scheduled a Child

Safety Conference. *Id.* ¶ 66. After Plaintiff's counsel informed them counsel would attend the conference with Plaintiff on February 1, 2012, the conference was canceled. *Id.* ¶¶ 68-69. On or about February 3, 2012, ACS employees commenced neglect proceedings against Plaintiff in Brooklyn Family Court, without notifying Plaintiff. *Id.* ¶¶ 29a, 70. The February 1, 2012 petition was signed by defendant Wilson and approved by Wilson's supervisors. *Id.* ¶¶ 80. "Based upon the false information and omission of exculpatory evidence that defendants provided, the Family Court judge purportedly issued an ex-parte order for Court Ordered Supervision." *Id.* ¶ 95. Plaintiff was not notified of the proceedings. *Id.* ¶¶ 106-07. The neglect proceeding was settled by an Adjournment in Contemplation of Dismissal on January 29, 2013, which provided that Malka would return to school and receive mental health services. *Id.* ¶¶ 29b, 112. Plaintiff agreed to cooperate with ACS supervision and ensure that her children's medical needs were met and that they attended school. *Id.* ¶ 114.

On or about August 5, 2013, ACS employees Jean Pierre Watson, Lawrence Sari, and Abdul Oloruntoba, each of whom is named as a defendant, took over the case. *Id.* ¶¶ 29c, 133. "On August 16, 2013, defendants [ACS Commissioner Ronald E.] Richter and Oloruntoba caused to be submitted to the Family Court an application for a warrant . . . that was not supported by probable cause or any justification." *Id.* ¶ 139. The application named defendant Wilson as the source of information. *Id.* ¶ 140. On several occasions in September and October of 2013, defendant Watson questioned Malka at her school. *Id.* ¶¶ 166-69. On November 8, 2013, at about 6 a.m., three police officers, named as John Doe Defendants, entered Plaintiff's home and arrested her. *Id.* ¶ 174. Police officers took her to Family Court, separated her from her children, and prohibited her from making any telephone calls. *Id.* ¶¶ 184, 185, 187. Plaintiff was released after the Family Court hearing. *Id.* ¶ 190. "On April 23, 2014, defendant Watson,

with the approval and support of defendant Sari, caused to be submitted to the court an Affidavit in Support" of an arrest warrant. *Id.* ¶ 203. On May 19, 2014, at about 6 a.m., defendant police officers Piccione, Kyrkos, and Witherspoon broke Plaintiff's door and stated that they had a warrant for her arrest. *Id.* ¶¶ 29h, 219. Plaintiff felt unwell and called for paramedics. *Id.* ¶ 219. When the paramedics arrived, the police officers admitted that they did not have a warrant for her arrest. *Id.* Plaintiff's minor child Nechama was also seized and suffered an unidentified harm "relate[d] to bodily privacy." *Id.* ¶¶ 217, 222. At a post-deprivation hearing on May 19, 2014, "ACS employees admitted there were 'no safety concerns' about any of [Plaintiff's] children." *Id.* ¶ 223. The Family Court proceeding terminated on April 4, 2016. *Id.* ¶ 244. Plaintiff filed a notice of claim with the Comptroller of the City of New York within 90 days of the termination. *Id.* ¶ 245.

Plaintiff alleges the City of New York "has official policies, practices or customs that caused [Plaintiff's] constitutional deprivations," "knew or should have known that defendants ACS employees were engaging in conduct that violated [Plaintiff's] constitutional rights," and "failed to take reasonable steps to ensure its employees acted with reasonable regard for [Plaintiff's] constitutional rights." *Id.* ¶¶ 237-39. She alleges the City has "an official unwritten policy, custom, or practice" in that "ACS workers are trained to lie." *Id.* ¶ 241. She also alleges the City failed to properly screen, train, and supervise ACS employees or intervene. *Id.* ¶ 339. Plaintiff further alleges that the State of New York is liable for her injuries because "State policies set the rates and caps on compensation for 18-B attorneys, which resulted in a denial of my constitutional right to counsel." *Id.* ¶ 242, 342.

Plaintiff alleges defendants violated her constitutional rights and New York State law. She seeks declaratory relief and compensatory and punitive damages of not less $900,000.

## DISCUSSION

### I. Standard of Review

Pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). *Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and the Court is required to read *pro se* complaints liberally and interpret them as raising the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (internal citations omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191-93 (2d Cir. 2008) (noting when "[a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally") (alteration in original). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) ("District courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend."). At the pleadings stage, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the Complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009)). The Complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II.  Statute of Limitations

Plaintiff's allegations involve incidents that occurred between 2011 and 2016. The statute of limitations for civil rights actions brought pursuant to 42 U.S.C. § 1983 in federal courts in New York State is three years. *See Owens v. Okure*, 488 U.S. 235, 249-51 (1989) (discussing *Wilson v. Garcia*, 471 U.S. 261 (1985), which held that courts deciding claims under § 1983 should "borrow" the State statute of limitations for personal injury actions); N.Y. C.P.L.R. § 214 (providing a three-year statute of limitations for personal injury actions, including constitutional torts). The statute of limitations for most constitutional torts under New York State law is three years, but claims for false imprisonment, including false arrest, must be filed within a one-year period. *See* N.Y. C.P.L.R. § 214 (most actions to recover damages for a personal injury must be commenced within three years); N.Y. C.P.L.R. § 215 ("The following actions shall be commenced within one year: . . . an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, [or] false words causing special damages."). Generally, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the harm" he or she has suffered. *See Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

Plaintiff filed the instant lawsuit on May 18, 2017. Counting back three years from that date, Plaintiff's claims would have had to accrue after May 18, 2014 in order to be timely. All of the allegations leading up to Plaintiff's arrest on November 8, 2013 are thus outside of the statute of limitations. Defendants Wilson, Trani, Vielot, Moore, Johnson, Richter, Oloruntoba and the John Doe Police Officers involved in the November 8, 2013 arrest are alleged to have harmed Plaintiff prior to or during that arrest, and are not alleged to have had any continuing involvement in Plaintiff's case. Accordingly, the claims against these defendants are dismissed

6

as time-barred. *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (affirming *sua sponte* dismissal of claims that fall outside of the statute of limitations for § 1983 actions).

### III. Supervisory Officials

As the Court previously explained to Plaintiff, a civil rights plaintiff seeking to recover money damages under 42 U.S.C. § 1983 must establish the named defendants were personally involved in the alleged wrongdoing or misconduct. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff names multiple top officials at ACS and asserts they were "responsible for making and implementing policy for ACS." Compl. ¶¶ 8-15. Plaintiff has not alleged defendants Jacqueline McKnight, Marie Philippeaux, Jan Flory, Gilbert A. Taylor, and Derrick Hinds took any personal action in the alleged violation of Plaintiff's constitutional rights. The vague and conclusory assertion they were "responsible for making and implementing policy," unsupported by any factual allegations, is insufficient to establish personal involvement in the alleged violation of Plaintiff's constitutional rights. As Plaintiff fails to adequately allege the personal involvement of these defendants, the claims against them are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### IV. Sovereign Immunity

Plaintiff names the State of New York as a defendant, but her only allegation against the State is that State policies set compensation rates for court-appointed attorneys. The Eleventh Amendment bars suits for damages against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of

immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff has not identified any waiver of sovereign immunity that would permit her to bring suit against the State of New York for how it administers its assigned counsel program. Accordingly, New York State is dismissed as a defendant pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against defendants Wilson, Trani, Vielot, Moore, Johnson, Richter, Oloruntoba, McKnight, Philippeaux, Flory, Taylor, Hinds, the John Doe Police Officers, and New York State are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Plaintiff's claims against defendants Sari, Watson, Witherspoon, Kyrkos, Piccione, and the City of New York may proceed. The Clerk of Court is directed to issue summonses against these defendants and to mail a copy of this Order to Plaintiff and the New York City Law Department. The U. S. Marshals Service is directed to serve the summonses, the Second Amended Complaint, and this Order on the remaining defendants without prepayment of fees. The Court refers this matter to Magistrate Judge Sanket J. Bulsara for pretrial supervision.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/s/ USDJ WILLIAM F. KUNTZ, II
WILLIAM F. KUNTZ, II
United States District Judge

Dated: Brooklyn, New York
April 23, 2019